Case No. 23-5173, America First Legal Foundation Appellants v. United States Department of Agriculture et al. Mr. Epstein for the Appellants, Mr. Sandberg for the Appellees. Good morning, Mr. Epstein. You may approach the bench if you want to adjust the height. Feel free. I think I think I'll work. Good morning, your honors, and may it please the court. My name is Daniel Epstein, and I'm counsel to America First Legal Appellants in this case. With me at co-counsel table is Michael Ding. I'd like to reserve one minute for rebuttal. This case concerns the tension between the president's confidentiality interests and the public's right to know about government's operations. This court should reverse the lower court or otherwise remand for a segregability analysis for three reasons. The first is, is that the plan submitted from the agencies under the executive order reveal nothing about presidential decision making. Second, the White House affidavit pointed to by Appellees in this case, interpreting the executive order in which is raised for the first time in litigation warrants no deference by this court. And lastly, failing to either reverse or remand spells terrible policy implications for the public. As to the first argument, that nothing the agencies created in response to the voting rights executive order reveals anything about presidential decision making. As this court well knows, the landmark case for the presidential communications privileges in resealed case, dealing with former agriculture secretary Mike SB in a special counsel investigation. There, the core of the presidential communications privilege applies to documents that reflect presidential decision making and deliberations. Of course, that case limited the scope of PCP to internal White House communications. I'm not sure I follow because didn't we hold there that communications by presidential advisors in preparing the president to make a decision are privileged? Your Honor, the issue in in resealed case actually dealt with who becomes a close presidential advisor. And so presumably before that, the assumption was that the president needed to be the one who was advised about something that needed to be confidential. Of course, what the circuit now recognizes is that you could have lower level individuals within the White House, like a special assistant to the president who nevertheless has official duties that relate to presidential decision. Right. So so that case, the main issue is about how far down the line the privilege extends. But I thought you were making a point that you had to reveal something about White House decision making. So the inputs to decision making are somehow not covered. But that seems pretty clearly established that the inputs are covered. So I'm not sure. I just I'm assuming what you mean by it doesn't reveal anything about decision making, because we've held I think repeatedly that the kind of information that advisors believe is relevant or as here that the president himself solicits are actually revealing of the nature of the decision. Your Honor, I think the answer is, is that it actually depends. So most of the times that this circuit has looked beyond internal White House communications, and particularly lower courts in the circuit and the DDC have looked beyond White House communications to say here we have a presumed solicitation. We have a presumed submission or communication from the agency. And the last factor is this relates to some presidential decision making universally that has either been internal White House communications. And those cases have not involved FOIA cases. Those are congressional oversight cases. Some of them were Federal Advisory Committee Act cases. But in the FOIA context, most of the time what we're dealing with is one agency or one principal at an agency making a communication. Here, what I think is incredibly odd about this case is this is not a particularized solicitation of advice. This is an executive order which goes to all agencies. And in fact, it should be kind of the reverse presumption, which is to say, if you're truly interested as a close advisor to the president or the president himself in getting confidential communications, executive order is incredibly blunt tool to do that. You will often directly solicit communications. You don't effectively advertise your communications through an executive order. And I think that to understand the legal rule you're proposing, if this EO had just said all agencies send me a list of recommendations for me to make future decisions, are you disputing that that would be covered by the privilege? Well, again, your honor, I think it depends. First of all, as as a rule, right, we know what the rule is and I'm not disputing what the rule in this circuit is, is that you need the president or a close advisor to the president to specifically solicit and receive a communication that is relevant to presidential decision making. I think there's a number of issues here. One is, is the question of whether the response of communications here reveal anything about presidential decision making. Recall, this case is not about internal White House deliberations. In fact, it's not about deliberations at all. Nothing in the record indicates that there was some give and take between the White House and the agency regarding these plans. In fact, when you look at special counsel Sauber's declaration, he specifically says that the purpose of these plans was so that the agencies can formulate the activities that they want to engage in. That's not that's clear by its factual definition, something that's not related to presidential decision making. I thought on pages 124 to 25 of the J.A., special counsel Sauber pretty clearly says that these were solicited by the White House to be used for briefing and decisions by the president. Is that is that not the case? Well, Judge Garcia, I think there's a lot of things to be said there, and I want to go back to your prior point. But the first is, is obviously we dispute that the executive order said anything that even comes close to soliciting confidential communications. And to the extent that the Sauber declaration rather says anything about the purpose being to advise the president, that is nowhere in the text of Section 3B of the executive order. Absolutely. So I appreciate that argument. It's just that you had said there's nothing in the record that reflects it. And I would just say this framing of the case seems the way you would ask us to look at it is essentially, Mr. Sauber says the words that would qualify this for protection, but that's contradicted by other evidence in the record. And so you talk about the EO and the agency declarations, et cetera, et cetera. But that's really the argument that we should find this is rebutted by contrary evidence. I think that's an alternative argument, your honor. And I think that if this court was to say, look, we have conflicting evidence. Obviously, you're on the posture of a motion for summary judgment and you're looking at a summary judgment standard. And I think that would warrant this court saying, look, there's actually some more fact finding that the district court needs to do. Let's remand kind of similar to what has happened in the parallel case in the Middle District of Florida. Let's do a potential segregability analysis. Let's look at the facts. But I want to go to your earlier point, Judge Garcia, and that is on the question of, well, isn't it well established that if you have these factors, solicitation, receipt and response solicitation, and it's for the purpose of presidential decision making, then we have a slam dunk answer that this is subject to the presidential communications privilege. And I don't think it's so clear in this circuit. First of all, we have a lot of case law that indicates that when you look at the situation of moving beyond the White House and you're looking at the executive branch agencies, one of the core factors is, does this involve a non-delegable duty? Here, whether the president wants to be advised or to think about planning for voting rights is certainly not one of the kind of core non-delegable duties of the president. Why does that matter? I understood that if you have a non-delegable duty, that it's especially clear that whatever advice is being provided is provided to the president because no decision can be made or forgone without the president's having been the relevant actor. But I don't take anything in the logic of our cases about presidential decision making to limit it. I recognize that's the strongest case, but for example, the president has the obligation to take care that the laws be faithfully executed. And if the president is, you know, fulfilling that obligation and authority, why isn't he entitled to confidentiality in the advice he receives and how to do that? Your Honor, those are excellent questions. Let me address them in turn. First, I actually do think this circuit has a limiting principle and why the kind of non-delegable duty question does a lot of work in this circuit. And that is the language that you've seen in the Judicial Watch First Justice Department case and other cases that say that the assertion of the privilege must be narrowly circumscribed. And so all of a sudden, if we expand it with the agencies, not only to non-delegable duties or to delegable duties of being covered by the privilege rather, and we apply it not just to a specific type of normal standard case of confidential communication, presidential advisor to one agency individual, but say that it could be throughout the executive branch through an executive order, that is certainly not narrowly circumscribed. I think that has very serious implications. I think the second thing to address your point about, well, the president has to take care that the laws are faithfully executed. In order to do that, he has all of these needs for confidentiality. And I think it relates to the earlier point, which is that certainly the president doesn't take care of the laws are faithfully executed by going on a speakerphone and talking to all agency heads at the same time. And that is effectively the tool that the appellees argue is being used here and should be justified as presenting kind of confidential communications. I'm sure I follow the logic of that, because if a president comes into office and says, you know, I'm on a listening tour for my first hundred days. I want to know from each agency what they think are the available policy options and what they would recommend. You could say that in a conference call and then say, you know, when you respond to me, we'll have a confidential one-on-one phone conversation. And it seems to me that that would be covered, even though it has the wholesale rather than retail aspect. I don't think that vitiates it. So I'm not I'm just trying to figure out what the wholesale or the executive order aspect of this what work you really think that's. I see my time is expiring. Can I answer this question? Okay, you may know we have a rule that as long as you have questions. Well, so I think this hypothetical is actually perfect because what you've presented is a situation in which the president has a political or policy interest in announcing kind of his interest of getting educated by the agencies and then second to that has his staff engaged in one-on-one confidential communications and that is precisely the sort of facts that the presidential communications privilege ought to protect not the sort of thing that you announce something big in an executive order and then only after the fact behind the scenes. Do you develop a template and have a office of management and budget website to submit that is not how you engage in the sorts of traditional cases of communications that this circuit is said should be presumed to be protected by the privilege. The last thing that I'll say about your point your honor is that one of the implications of saying that we can have an executive order. We don't need to rescind the executive order to change the meaning. We could just implement it through all sorts of other systems in which we've engaged in and which is in the record is that the public doesn't know what the executive order means executive orders are published in the Federal Register executive orders lead to policymaking. There's a big presumption that if an executive order is going to say this is confidential information. It will say that there's a reason why executive orders don't say this is confidential information because executive orders are really bad ways for presidents to get that information and presidents typically don't want to publish policies in the Federal Register if they want responses to be confidential. And so with all of this we can't just think of the implications for the foyer requester community. We also have to think of the implications for Congress, which is the council just on the media CEO because this is the proxy of your argument. I think the government might say what is public is the request for plans. And the question is then what is the plan that was submitted and they just point to the language that says essentially, please identify the ways that you can promote voter registration and their view is that that's essentially asking for a list of options for the White House to then consider give feedback maybe take other action on and that it's totally consistent with the district court's ruling that these were inputs into presidential decision-making and just like to hear your direct response to that. Yeah. So your honor, of course, you know what you have here is a series of public documents the plain text of the executive order the White House fact sheet typically executive orders come with an office of management and budget interpretive memorandum. My question is on the plain text of the EO. Why should we read submit a plan outlining the ways you can promote voter registration to mean tell us all the ways you have decided to promote voter registration. Yeah. So and sorry your honor two reasons. One is is an agency plan for its agency purpose is not a White House purpose, right if the language said for the purpose of the president engaging in some policy-making decision, then we would have a clear industry of the executive order that there was a presumption of privilege. It's so interesting because I read it as distinct from recommendations asking for capabilities, you know, what can each agency what can each agency do tell us about how you interact with the public tell us about, you know, what kind of ID you issue tell us about you know, what your websites are and and don't bother to sort of stress about formulating recommendations. You're not, you know voter participation experts. Just tell us about your capabilities and we'll get all that and then we'll try to come up with something that sort of you know, coherent and and cross-cutting and straightforward that's worthwhile. So what about the executive order contradicts that understand? Well, your honor, let's assume that your understanding is the right understanding. Then what we have there is we have all sorts of data that the agency produces the White House and to your point that then leads to some give-and-take between the White House and the agency about let's try to formulate the plan. That give-and-take is presumed to be subject to the presidential communications privilege. What the agency produces for it for submission to the White House involves nothing about deliberations between the White House and the executive branch and in fact doesn't reveal anything about presidential decision-making. Let me just follow up on Judge Pillard's question if I may counsel. This is Judge Rogers. Is the court to ignore the context in which this executive order was issued? I'm not sure I understand your question. Well, let me be clear. Thank you. This is March of the president's first year. After how many lawsuits were filed contesting the election results? All right. So the president is in office and by the time he gets his staff organized and all it's March and he says one of the things we ought to do is check what the agencies are doing. So send out a notice to the agencies along the lines that Judge Pillard suggests. And while you contest, well, it shouldn't be done by executive order, maybe from points of efficiency, that was the better way rather than send thousands of emails and letters to individual agencies. I'm not quite understanding your argument here as what I thought your argument in the brief was and maybe the government's response persuaded you that there was no merit to the notion that here the executive order was as a result of soliciting information that could be deemed to be within the presidential communications privilege was too broad because it was asking for things that A, the agencies had already done, which are a matter of public record, as well as what more they should do. So you reject entirely the notion that a president is entitled to ask the agencies for information about what they're doing. So he can make a determination about A, what more should be done, what kind of coordination there should be, and what kind of oversight. Well, Your Honor, I think I understand your question. Why don't you understand about it? No, I think I understand it. Sorry. I understand the question. And I think, of course, the president can solicit information that the executive branch agencies produce. The concern here is what is the limiting principle on that? Can the president request that an agency, when it creates a record that might at some point be subject to a congressional subpoena, can the president say, please provide that record to me? And therefore, we're going to be able to assert privilege. That's not this case. Well, and a follow up on that, unless Judge Rogers has one. Please. So am I wrong that if a FOIA request were sought against the 14 agency defendants in this case, asking them what actions have you taken to provide documents relating to actions that you have taken to increase public access to voter registration materials, or do you have any policies on access to voter registration materials, asked in that way, I would assume that it would be permissible. It's sort of like attorney-client privilege. You can ask facts. You just can't say, what did you talk about with your lawyer? And so here, I actually, so maybe I'm more useful. This is getting to my trying to understand your concern that sustaining the district court here could throw kind of a cloak of secrecy over a lot of materials, and I'm not understanding it that way, but maybe you can describe the fearsome situation. Yeah, and apologies if I wasn't so clear. I think to go to some of Judge Garcia's questioning is, we could just look at the record and say, some things are public, some things are not, right? It was not public that the White House created templates. It was not public that the White House created, or rather, Office of Management and Budget created a website for the agencies to submit information to. It was public that there was an executive order. It was public that there was a fact sheet, and so what is problematic is, you could have a series of executive orders that look very similar to this one, but the public has no way to assess, well, is this going to be one of those executive orders where at some point of time, and by the way, we're not told in the declaration when that time was, where all of a sudden the White House could develop a template and develop a website, and that therefore becomes the solicitation that prevents us from getting public access to records. That would be a very difficult policy for the transparency community because it would effectively chill them from seeking information. Is there an answer in that to the question that I posed about whether a FOIA request, even where under the district court's approach, could a FOIA request be made directly to an agency asking for particular kinds of information? Yes, Your Honor, a FOIA request could be made. And not be blocked by a presidential communications bill. Sure, so you could write a FOIA request  that says, do emails exist between, confirm or deny the existence of emails between the agency and the White House, or some formulation like that. But I'm trying to get a, when you're talking about the information that would be shielded, you know, when you're talking about communications with the White House, that is presumptively shielded, but I'm saying that if you wanted to know what the agencies themselves are actually doing, on your presumption that this was saying, you know, go forth and do all the things you can do, that the executive order meant to say, go forth, agencies, do all the things you can do, then is there anything to stop a FOIA request directly asking the agencies, apart from any communication with the White House? Yes, I understand your question. And so it's... I think the police position would be whether those documents constitute a plan or whether they constitute what may look like a plan. The presidential communications privilege will apply so long as that data went to the White House and was then presented to a close advisor of the president. Maybe I'm not being clear, but the submissions, the template as filled out, would not be obtainable under FOIA. But when you talk about secret law and the agencies actually doing things that the public doesn't know about, it's that aspect. Like, if you're right, that what the president was asking for was agencies have at it, go come up with a lot of stuff. And if the agencies then do that, you know, putting aside the president's role and the submission of these templates, that activity is still presumably subject to FOIA, but that's not what you're interested in in this case. But I'm just trying to understand the claim that it casts this sort of secrecy cloak over a lot of functioning of the government. Your Honor, I think to your hypothetical, I think the appellees would in fact say that everything that you're talking about would be subject to the presidential communications privilege. How do we know? Because when plans were released to another FOIA requester, the White House took the position that that was inadvertent. That's the strategic plans though, not- Well, but then what's the daylight between a strategic plan and then information that might be responsive to the executive order that wasn't put into the strategic plan document itself? And I think the test that this- Counselor, I think the question is, could you have written a FOIA request to the agencies to describe all the final agency actions they took in response to this executive order? And I believe the answer could be wrong, so that that's not this case, but it's obviously yes. What you can't get are the deliberative documents within the agency, and maybe in this case, if they are deliberative, the documents between the agency and the White House. Your Honor, that is a phenomenal question because my response is, is that in fact, our position is that the agency plans were final agency documents before they went to the transom of the White House. And the key question here is, is would producing that document, not any of the internal White House deliberations, not any of the back and forth with the agencies, is producing that plan going to interfere with presidential decision-making? And the answer is obviously not. Thank you. I just had one final question, which is, you raised this argument about whether a quintessential and non-delegable power is involved, and either now or on rebuttal, I'd like to know if there's somewhere in your opening brief that you raised that argument. So, to be frank, I think we didn't raise it specifically, other than the case law we cited deals with this issue repeatedly. Thank you. Thank you very much. I don't know if Judge Rogers or Judge Pillard has any final question. My only question is, I saw that there's a template in the joint appendix that's called interim strategic plan. Do you know if there's a template that's non-interim in the record? Maybe a better question for the government. Yeah, I mean, my understanding, based off my review of the Sauber Declaration, is that there were just templates. But, you know, at the least... This is the template, as far as you know. That's as far as I know. And the fact that it refers multiple times to... It directs the agency to briefly describe potential agency actions. That doesn't contradict your reading of the executive order as effectively directing agencies to go ahead and take action, as opposed to wait for, you know, presidential policy. Yeah, I mean, I think the law of this circuit, Your Honor, ultimately looks also at the question of what is the proposed use. And if you... We have all sorts of cases in this circuit where this court has said that if you really want to manifest your intent to control your document or to otherwise make sure it remains confidential, you should manifest that clearly. We have all sorts of instances of the White House entering into memorandum of understanding. We've seen that with FBI background investigations, for instance. We've seen that with Secret Service records, for instance. And I think this court looks at the record and has to determine when we see use or agency purpose or anything like that. Is it for a White House purpose, where the White House has retained control over those deliberations, or is it for an agency purpose? And it might be the case that this court decides, look, it may be for an agency purpose, but it nevertheless may be subject to deliberative process privilege. That is a different question than whether the presidential communications privilege applies. Judge Rogers, do you have any further questions? No, thank you. Thank you, and we'll give you your- Thank you very much, Your Honors. All right, and now we'll hear from Mr. Sandberg. Good morning, Your Honors, and may it please the court, Jeff Sandberg for the 14 agency defendants. As some of the, Your Honors, questions reflect, this case is about a very narrow class of documents. It is documents prepared at the president's express request, submitted to his senior most domestic policy advisor, laying out a panoply of policy ideas and proposals for White House consideration. These are inputs into presidential and administration decision-making. It is, in the words of the Sealed In Re Sealed case, it is a comprehensive exploration of all policy alternatives. And there, as I think Judge Pillard's question got at earlier, there's no requirement that these inputs themselves reflect the outputs of presidential decision-making. The fact that they constitute advice to the president via his domestic policy advisor brings them within the heartland of the presidential communications privilege. The executive order, I get that what feels different about this case for my opposing colleague is that the president conveyed his request via executive order, rather than via speakerphone to all agencies, as he suggested. But I think if anything that furthers rather than inhibits transparency, the government has received many, many, many FOIA requests about implementation of this executive order. And we have responded with the documents that we can disclose that, as Judge Garcia had asked about, that don't reflect deliberative material and that don't reflect presidential communications. I think I'm actually in, we're in violent agreement with our opposing colleagues here that they are entitled to know about the operative commitments of the agencies and their effective policy. They just need to ask the agency for documents reflecting those policies. What they're not allowed to do is to say, well, that sounds like it might involve dozens of pages. I want one-stop shopping and get a list of alternatives. And for most of these plans, they include ideas that never got off the drawing board or were decided against or weren't implemented as proposed. And that is from the very outset of the presidential communications privilege in the Nixon case, the Supreme Court said, a president and those who assist him must be free to consider different policy alternatives without the public looking over their shoulder. What if we read the executive order as Mr. Epstein does, as telling the agencies not recommend things, but do everything you can along the following lines to increase access to voter registration and information about voter registration and we'll stand ready as the White House to do oversight. And if there's any additional policy tweaks needed, we'll respond to that. Would that change your analysis? Well, it certainly is not a plausible reading of the executive order, Your Honor. As the district court explained, the most reasonable reading of this is calling for what I think Your Honor termed capabilities of agencies, things that they can do rather than things that they will do. And the fact that the executive order didn't use a magic word, recommendations, doesn't defeat that that's the most natural reading of that. And then you have the Sauber Declaration and the agency declarations that come in and confirm that that most natural reading of the executive order is in fact the correct one. That is the documents as they exist in the real world are lists of policy proposals rather than lists of final agency actions. And of course, we're not focused here on what other kinds of documents might hypothetically be responsive to the executive order. The question under FOIA is, look at these actual agency records. Are they or are they not privileged? And it's not post hoc or retroactive for the agency and White House declarants to come in and say that is the character of these documents. That's just how FOIA works. It's just a question, and this is hypothetical, right? If the president had just asked agencies for all the things you've done over the past five years in this area, but then it was very obvious the president and the White House actually used that to inform presidential decision making. Would that still be protected? In other words, it seems like the ultimate question is the document. The ultimate question on your view is whatever the document is used for presidential decision making. And in this case, the fact that you say their potential and not final actions furthers that argument, but is it essential? I know this answer isn't satisfactory, but I know I would have to know more about the circumstances to know whether it really is reflective as this court's president says, reflective of presidential decision making and deliberations. We're not asking this court to address that question. We don't want this court to go down any slippery slopes here that it's not comfortable going down. In Ray Seald's case, actually contemplate pretty clearly that certain kinds of post-decisional or factual information would be covered by the privilege where it is sufficiently connected to presidential decision making. But here, all this court needs to say is that the declarations confirm that these are inputs into presidential decision making and that they are lists of ideas and you don't need to go any further than that. How, though? I mean, that seems like that could be potentially very broad. If a presidential decision includes a decision not to act, if presidential decisions include potential oversight with an uncertain prospect of policy and the president asks for particular matters, raising red flags about potentially about the president's intent, whether it's a lawful or a hatch act, violative concern. I mean, it's just sort of spinning out that I think where where the challenge is coming from. What and what what are the things you can point to that can appropriately confine the privilege narrowly as our precedents emphasize? Yeah, I think the limiting principle here is the one set forth in Judge Rogers opinion for the court 20 years ago, which is that documents that are flowing in with with advice to the president are protected by the privilege. But agency documents within the agency itself are not. And certainly the documents flowing into the White House need to be connected to presidential deliberate decision making and deliberations. And here this court can just say that that's that's abundantly clear. It's abundantly clear the White House was involved. The fact sheet that was announced that reflected certain agency actions that had already been vetted with White House approval being announced reflects the White House's involvement here. This wasn't just a case of, you know, tell me everything you're doing and I'll speak up if if I if I want to say anything about it. I mean, the president said this is a core domestic policy goal of mine. I mean, announcing it to everyone and I, you know, get back to me with your ideas and we'll take it from there. So am I right that it's the it's the form of the document going to the White House? The fact that it's going to the White House that's privileged is template because it's generated and solicited by the White House is privileged but that the information contained as you I think you said when you started is not. Well, it's it's it's kind of a technical objection to what you're on and they can't get that they can't get this document, but they can get all the information in the document if it's contained in some other agency document and a lot of this stuff has been made public in response to other requesters your honor asked about the final version of the template. It's it's not in the record in this case, but it has been released under FOIA. I believe at least the Heritage Foundation has a page that collects certain documents that were released under FOIA and I haven't independently confirmed the authenticity, but there is a final strategic plan template on there and it role of the interim and the final just give us some context on my understanding is just that the White House so the executive order calls for submission of a plan 200 days after the executive order but there are many agencies who are you know really interested in these ideas and followed up immediately with the White House about different ideas and so it ended up being that there was a lot of back and forth between the Domestic Policy Council and individual agencies and at some point an interim template was provided to them to help guide them in their initial spitballing of ideas you might say and not all agencies engaged in that early spitballing. I mean some of these these plans that came in after 200 days contain just lists of ideas that were never implemented but other agencies that had been engaged with the White House more ahead of time were able to report on things that were you know announced around the same time. These plans are a snapshot in time of the status of the comprehensive efforts of the White House to explore different policy alternatives. So there weren't two waves of submissions. The interim was just like a worksheet for the agencies and then they submitted on the final. I'm actually not sure your honor. I'm not sure whether the interim templates reach the White House. Those weren't requested here. What was requested was the final documents and submitted in September. If there are no further questions we'd ask that the judgment be affirmed. So what about the Kaiser question that Mr. Epstein's briefing has raised if we think that there is a genuine ambiguity in the executive order about what it is requesting. Would this be a case in which there's any kind of deference? How do we think about that? We don't see it as a Kaiser question your honor because we're not saying that the executive order is like the law that controls here. Rather the law that controls here is this court's FOIA case law and presidential communications privilege case law. What the executive order is is a piece of evidence factual evidence that the precedent solicited these communications and if the face of the executive order called for a submission of final agency plans reflecting actions already taken and then the Sauber declaration said something contrary to that you would then have a contradiction between the declaration and the executive order. But here the Sauber declaration confirms rather than contradicts the natural reading of the executive order. So we're not asking for deference. We're just saying that our declarations confirm what the actual character of these documents in the real world is and that's not inconsistent with what the executive order had called for. And does it matter for applicability or not of deference or of Kaiser whether the executive order is regulates private conduct or is just a communication to other aspects of the government or I don't want to get out ahead of the Solicitor General on on the potential application of Kaiser deference to the executive order. We just do not see the executive order as you know a controlling legal document to which we are claiming deference here. It is it is playing a factual role here which is showing very clearly that this was solicited by the president. You don't have to have any doubt that the president himself solicited the preparation of this advice here. But functionally if this had happened by speaker phone if it had happened by an internal memorandum that the outcome on privilege would be the same. It just the public would not have known as much that this was a priority of the  and you know likely not as many FOIA requests would have come in but the fact that the president chooses voluntarily to announce something publicly that he doesn't have to doesn't mean that you then we have waived our right to assert privileges that would otherwise apply as to presidential communications and I had the impression that some of the agencies did go ahead and implement some aspects of the capabilities that they reported. Is that right or am I mis-expressing? That's right. That's right. A lot of the ideas frankly though they were for many agencies they were deliberative at the time that they were submitted to the White House. The White House ultimately said okay these sound like good ideas. You know the president approved the slate of ideas put before him to the extent they were called to his attention and so those things were then implemented and so were any of them implemented before they were reported? Is there anything in the record on that? Well I believe the fact sheet that came out in September 2021 was more or less contemporaneous with the strategic plan. So yeah there had been some back and forth ahead of the 200 day reporting requirement with the White House but as our brief states that was done with White House knowledge and approval those things were announced because there had already been you know the back and forth exchange between the White House and the agency. So you know I think the best way to think of this is a snapshot in time. Some of the things listed in here are things that have just happened. Some of the things are ideas that the agency is just waiting for the White House to say yes to. Some of them are ambitious possibilities or off the wall ideas. One agency came up with ideas for another agency as to what they could do for voting access ideas. So this was a comprehensive exploration of all policy alternatives. The strategic plans gave a snapshot in time. To the extent plaintiffs want to know about the operative commitments and effective policy of the agencies they're welcome to ask the agencies as many other organizations have done. If they can't already find that information on the agency websites because of course the whole point of this is to help get the word out about voting access and voter participation. So much of the actions taken by the agency have been touted by the agencies themselves without the need for FOIA. Thank you. All right, Mr. Epstein, you have your rebuttal minute. Thank you, Your Honors, and I will be quick. The Applees have just told you that all that the executive order is is factual evidence. Well, that is precisely the policy argument that I think this court needs to move against, which is to say that executive orders are regulations. They have the force and effect of law, and when you issue them, you're issuing them as final to direct decision-making by the agencies. If an executive order simply becomes factual evidence, then an executive order is not distinct from a template. It's not a public document published in the Federal Register, is no longer distinct from an internal communication by the White House with the agencies, and this spells terrible policy consequences. In fact, we understand the policy consequence, which is that the Applees say that the remedy for the FOIA and transparency community is come up with a fishing expedition to all of the separate agencies. Make sure you tailor your FOIA requests differently for each agency to get all of the potential responsive information. And of course, go and litigate that because you don't know, in fact, what's there. Well, we do know what's fact, what in fact is there, and that's what executive orders do. And that's why... May I ask you, counsel, given the situation where we've heard a lot of argument already, I want to know what your position is now. I had originally thought that your organization would welcome an executive order that outlined exactly what the White House was seeking. All right, and then having that heads up, FOIA requests could be submitted to the agencies as to what they were doing and maybe what they were thinking about doing and see what response you had. The other way, excuse my voice, you know, by a microphone or emails would make your burden much more difficult in terms of knowing what is the White House doing. So it says, and as I understand your attack on the, what the White House is doing, as I understand your attack about it would be helpful if some words had been included, et cetera. But you don't really attack the declarations or the fact statement. And it's, I need to understand what precisely is the injury that your organization is objecting to. Because I think questions by my colleagues have whittled away a lot of the broader challenges. So I want to be clear where you are now. Your Honor, I think to answer your questions and concerns, our position is a plain reading of the executive order says in certain sections, the president will receive recommendation. And there are in fact, unlike my colleague at the lead, there are magic words in the executive order. There's the magic word recommendation. It just so happens to not be in the sentence in Section 3B. And for the public, there is an important need to know when is the executive, the chief executive saying that he needs recommendations and advice to which we did not submit a FOIA request for. And when is he saying that I need final agency plans? And I think here the injury is, is that if you look at all of the factual record, the use of the documents, the standard is what is the use when the document was created? And here there's nothing to contradict that the use for these plans when they were created before they went through a series of back and forths with the agencies, which happily notes that there was spitballing. That initial use before it ever got submitted, that is an agency purpose. And that is not something that interferes with presidential decision making. It's something that truly interferes. You know more about this than I do. But as you know, in this complex form of executive branch government we have, you're not sitting down face to face with the president of the United States for three or four days going through agency proposals. That's not the way it works. So you have this other system. And I want to understand, because I thought you made some good points, is what is the baseline objection here? I mean, you knew this is what the president wanted to do. The declarations that we have filled out. You know, I know, it may not be in the record, about how the executive office of the president works in terms of gathering information, in terms of making decisions, whether it's on the budget, whether it's on foreign policy, whatever it is, there's a lot that comes in. There's a lot that's winnowed through and then there are things that are reviewed directly with the individual who is the president. So what is it that your organization thinks here? It was denied a legal way to get information, either directly from the agency or through these FOIA requests that were advised, were filed at the White House, to which it responded. Yes, Your Honor. Our injury was that we reasonably interpreted the executive order to state that agencies should create plans. Plans are normally thought to be final agency actions. A lot of FOIA requesters thought the same thing. And then in the middle of litigation, not before, not at the time of the executive order, we were told these are subject to presidential communications privilege on the basis of a lengthy affidavit by a special counsel to the president. And our argument is that these documents are for a primarily agency use, were created for the purpose of an agency use, that subsequent deliberations between the agencies in the White House are presumed to be subject to PCP, but that ultimately... Subject to what? Sorry, Your Honor. Presidential communications privilege. But that ultimately, the release of these documents, or at least saying that they're not subject to privilege under presidential communications privilege, would not interfere with the president's ability to obtain confidential advice and make decisions. Mr. Epstein, you mentioned in your primary argument today the case in the Middle District of Florida, and I thought you said something about remand for segregability analysis. The court has not remanded for any segregability analysis there, has it? Well, Sue, it's not yet in the appellate court. It's still in suspended animation before the district court. The judge has not issued any final rulings, but he has reviewed the documents in camera. Right, and so you've requested a segregability analysis, but there's no order there to that effect. No, and the lower court judge did not conduct an in-camera review. Thank you. Thank you very much. The case is submitted.
judges: Pillard; Garcia; Rogers